[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15209
Non-Argument Calendar

_____

D.C. Docket No. 2:08-cv-14261-KMM

CHRISTOPHER JORDAN,

Plaintiff-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,

Defendant,

SARGEANT MURPHY,
Officer for the Martin Correctional Inst.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 20, 2012)

Before CARNES, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Christopher Jordan, a Florida prisoner proceeding *pro se*, appeals the district court's grant of summary judgment to the defendant, Sergeant Deneen Murphy, in his civil action under 42 U.S.C. § 1983, alleging an Eighth Amendment violation.  On appeal, Jordan argues that Sgt. Murphy acted with deliberate indifference to a serious risk of injury when she failed to protect him from being physically attacked by another prisoner.  For the reasons set forth below, we affirm the district court's grant of summary judgment to Sgt. Murphy.

I.

In April 2010, Jordan filed a *pro se* amended complaint under § 1983 against Sgt. Murphy, an officer at Martin Correctional Institution ("MCI"), alleging that, on April 6, 2007, while he was incarcerated at MCI, he was physically threatened by Floyd Robinson, another inmate, in Sgt. Murphy's presence.  In response, Sgt. Murphy "employed the least and most minimal measures" to resolve the conflict by separating Floyd and Robinson.  Further, Sgt. Murphy did not "follow[] up with preventative and correctional measures designed to ensure the safety of both inmates."  Shortly after the incident, Robinson physically attacked Jordan in Jordan's cell, which Sgt. Murphy had left open and unsupervised, in violation of the Florida Department of Correction ("DOC") rules.

2

The attack resulted in the loss of Jordan's right eye, which was replaced with a prosthetic eye, and progressively weakening eyesight in his left eye.  Jordan also suffered damage to his head, psychological distress, migraine headaches, periodic dizziness, and emotional trauma.  Jordan claimed that Sgt. Murphy's actions violated the Eighth Amendment because her "acts or omissions" created a substantial risk of serious harm to Jordan, and she was deliberately indifferent to his safety and security.

After discovery, Sgt. Murphy moved for summary judgment, arguing that Jordan failed to demonstrate an Eighth Amendment violation.  Contrary to his allegations, Sgt. Murphy was not aware that he was in danger of an attack.  Specifically, she had no knowledge of any prior issues between Jordan and Robinson, and Robinson's prison records reflected he had received minimal disciplinary action.  Further, Sgt. Murphy confirmed with Jordan and Robinson that "everything was okay" between them, and she remained on their dormitory wing for a period of time after the initial argument ended.  Additionally, Sgt. Murphy asserted that she responded to the incident, which appeared to be merely a "commonplace argument" between inmates, in an objectively reasonable manner.  Regardless, Sgt. Murphy was entitled to qualified immunity because her actions did not constitute a clearly established constitutional violation.

3

In support of her summary judgment motion, Sgt. Murphy submitted several exhibits, including her own affidavit and affidavits from MCI Security Chief James Upchurch, two MCI inmates, DOC inspector Nelson Rios, and DOC Program Administrator Bradford Locke.  Sgt. Murphy also submitted excerpts from Jordan's deposition.

The magistrate issued a report and recommendation that the district court grant Sgt. Murphy's motion for summary judgment.  The magistrate found that the undisputed material facts showed that, when Jordan was in his cell, with the cell door "locked" open, such that others could enter, Robinson entered Jordan's cell and "brutally attacked Jordan."  The attack resulted in severe physical injuries to Jordan, including the loss of an eye.  While the undisputed facts involved a "tragic and brutal" attack on Jordan, the attack and resulting injuries were not caused by any unconstitutional action or inaction by Sgt. Murphy.  The evidence showed that Sgt. Murphy had no knowledge before or during the verbal argument between Jordan and Robinson that Jordan was in danger of an imminent attack.  Moreover, Sgt. Murphy had no knowledge of any prior issues between Jordan and Robinson, and Robinson's prison records showed that he had received minimal disciplinary action during his confinement.  After the verbal altercation concluded and while she was still conducting her rounds, Sgt. Murphy confirmed with Jordan and

4

Robinson that "everything was okay." Additionally, Jordan never expressed concern to Sgt. Murphy regarding his safety.

The magistrate further found that, even if Sgt. Murphy was aware of a risk of harm, she responded in an objectively reasonably manner by ending the dispute and ordering Jordan and Robinson to separate to different locations. Further, during the 10 to 15 minutes that Sgt. Murphy remained on the wing after the "name-calling incident," she made efforts to determine that no further problem existed between Jordan and Robinson, and they confirmed that the problem had been resolved. Sgt. Murphy did not observe that Jordan needed protection, and no other inmate alerted her to any possible danger to Jordan. Based on her experience, Sgt. Murphy concluded that the initial altercation was only a "commonplace argument" between inmates that would not result in violence. For these reasons, Jordan could not satisfy the subjective or objective requirements to show that Sgt. Murphy was aware of a substantial risk of serious harm to Jordan.

Additionally, the magistrate found that Jordan's claim that Sgt. Murphy was responsible for his injuries because she left his door opened and the wing unsupervised was contradicted by the undisputed facts. No DOC policy required Sgt. Murphy to lock Jordan's cell door during the relevant time period, and there appeared to be no reason for Sgt. Murphy to lock the door closed for Jordan's

5

protection.  Further, after the argument concluded, Jordan and Robinson were sent to different locations, and Sgt. Murphy never left the wing unsupervised.  Instead, Robinson's attack was a "sudden, isolated incident arising out of his anger with [Jordan] over use of a mop."  In sum, Jordan failed to show an issue of material fact regarding whether Sgt. Murphy violated his Eighth Amendment rights by failing to protect him from Robinson's attack.  Further, because Jordan failed to demonstrate a constitutional violation, the magistrate was not required to determine whether Sgt. Murphy was entitled to qualified immunity.  Regardless, Sgt. Murphy was entitled to qualified immunity because, under the circumstances, a reasonable corrections officer would not have been aware that her actions or inactions violated the Eighth Amendment.  Accordingly, the magistrate recommended that the district court grant Sgt. Murphy's motion for summary judgment as to Jordan's constitutional claim, and dismiss without prejudice Jordan's state law negligence claim.

The district court adopted the magistrate's report and recommendation and granted Sgt. Murphy's motion for summary judgment.

## II.

We review a district court's grant of summary judgment *de novo*, considering the facts and drawing all reasonable inferences in the light most

6

favorable to the non-moving party. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Once the party moving for summary judgment discharges its "initial responsibility of informing the district court of the basis for its motion," the burden shifts to the non-moving party to come forward with relevant evidence beyond the pleadings showing that there is a genuine issue for trial. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314-15 (11th Cir. 2011). If the non-moving party fails to make a sufficient showing to establish an essential element of its case, summary judgment is appropriate. *Id.* at 1315. Mere conclusions and unsupported factual allegations are insufficient to defeat a summary judgment motion. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting deliberate indifference to a substantial risk of serious harm to an inmate. *See Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994); *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). To survive summary judgment on an Eighth Amendment claim concerning prison conditions, a plaintiff must "produce

sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant[']s deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). To establish deliberate indifference on the part of a prison official, a plaintiff must show: "(1) subjective knowledge of a risk of serious harm, (2) disregard of that risk, (3) by conduct that is more than gross negligence." *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010). The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979. Thus, prison officials may avoid liability under the Eighth Amendment if (1) "they did not know of the underlying facts indicating a sufficiently substantial danger," (2) "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent," or (3) "they responded reasonably to the risk, even if the harm ultimately was not averted." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617-18 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 844, 114 S.Ct. at 1982-83).

Finally, government officials are immune from suit when performing discretionary functions in their individual capacities unless they violate "clearly established statutory or constitutional rights of which a reasonable person would

8

have known." *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quotations omitted). However, we have declined to address whether a defendant was entitled to qualified immunity where we first held that the district court properly granted summary judgment to the defendants as to the plaintiff's Eighth Amendment deliberate indifference claim. *See Carter*, 352 F.3d at 1350 n.10 (stating that defendants had no need for a qualified immunity defense when plaintiff's deliberate indifference claim failed).

Here, the district court correctly concluded that Jordan failed to present sufficient evidence that Sgt. Murphy knowingly disregarded a substantial risk of serious harm to his safety or that she acted unreasonably in response to a known risk. *See Thomas*, 614 F.3d at 1312*; Rodriguez*, 508 F.3d at 617-18. The undisputed evidence revealed that, on April 6, 2007, Sgt. Murphy observed Jordan and Robinson using profanity while verbally arguing over a mop. Although Jordan alleged in his complaint that Sgt. Murphy had observed a physical confrontation, he presented no evidence to support that claim, and on appeal, he describes the encounter as a "verbal altercation." While Jordan now asserts that he "convey[ed]" to Sgt. Murphy that he felt threatened, in the district court he presented no evidence to substantiate this claim. Sgt. Murphy's unrebutted affidavit established that Jordan never indicated that he was afraid of Robinson or

9

that he needed protection.  Moreover, Rios, the DOC inspector, confirmed that "no tangible evidence or witnesses" supported Jordan's claim that his injuries resulted from Sgt. Murphy's failure to acknowledge that Jordan had expressed fear for his safety or a need for protection.  Additionally, Sgt. Murphy, who had been a corrections officer for 12 years, stated that, based on her experience, arguing and name calling is common among inmates and does not often lead to violence.  Thus, Sgt. Murphy's observation of the argument between Jordan and Robinson was insufficient to alert her that Robinson posed a substantial risk of physical injury to Jordan.  *See Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

Regardless, Sgt. Murphy's response to the verbal argument was objectively reasonable.  *See Rodriguez*, 508 F.3d at 617-18.  When Sgt. Murphy observed Jordan and Robinson arguing, she ordered them to stop and to separate from each other.  Further, Jordan testified that he and Robinson complied with Sgt. Murphy's order to stop arguing.  After the argument, Sgt. Murphy remained in the area for 10 to 15 minutes, and she heard no further arguing after Jordan and Robinson separated.  Two inmate witnesses corroborated that Sgt. Murphy did not leave the area until the situation appeared "calm" or had "cool[ed] down."  Further, Jordan presented no evidence that he had any prior conflict with Robinson or that Sgt. Murphy was aware that Robinson was a violent inmate, and prior to the attack,

10

Robinson had received only two prior disciplinary reports, one for fighting in May 2003 and one for disobeying an order in February 2006.

Jordan argues that Sgt. Murphy acted unreasonably by failing to handcuff Jordan and Robinson or to lock them in their cells. However, before she left the area, Sgt. Murphy ensured that Jordan and Robinson had separated, and their conflict had been resolved. Thus, Sgt. Murphy had no apparent reason to restrain Jordan or Robinson and no reason to believe that Robinson would return to physically attack Jordan after the verbal argument had concluded. Jordan also argues that Sgt. Murphy left him unsupervised, but evidence showed that the prison dormitory was supervised at all times from an officer in a centrally located Officer's Station. In sum, Jordan failed to present sufficient evidence to demonstrate that Sgt. Murphy acted unreasonably in response to his verbal argument with Robinson or that she showed a disregard for his safety. *See Rodriguez*, 508 F.3d at 617-18.

Finally, because the district court properly granted summary judgment to Sgt. Murphy as to the Jordan's Eighth Amendment deliberate indifference claim, we decline to address whether Sgt. Murphy was entitled to qualified immunity. *See Carter*, 352 F.3d at 1350 n.10. For the foregoing reasons, we affirm the district court's grant of summary judgment to Sgt. Murphy.

11

**AFFIRMED.**